UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Plaintiff,

v.

GRAYS HARBOR COMMUNITY
HOSPITAL,

Defendant.

CASE NO. C10-5616BHS

ORDER DENYING
DEFENDANT'S MOTION
FOR COURT INTERVENTION

This matter comes before the Court on Defendant Grays Harbor Community

Hospital's ("GHCH") Motion for Court Intervention to Facilitate Settlement Efforts (Dkt.

14). The Court has reviewed the briefs filed in support of and in opposition to the motion

and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I.  PROCEDURAL HISTORY

On April 21, 2011, GHCH moved the Court to intervene in the parties' ongoing

settlement efforts. Dkt. 14. On May 2, 2011, Plaintiff Equal Employment Opportunity

Commission (the "EEOC") opposed GHCH's motion. Dkt. 19. On May 6, 2011, GHCH

replied. Dkt. 21.

## II.  FACTUAL BACKGROUND

The matter currently before the Court arises out of a breakdown in negotiation

between the parties. The facts relevant to the instant motion are not materially disputed.

The underlying case is a Title VII, sexual harassment, class action brought by the EEOC

on behalf of certain individuals against GHCH. Complaint (Dkt. 1) ¶¶ 3-12. The EEOC alleges only federal claims and makes no state law claims on behalf of the class. *See, e.g., Id.* ¶ 1.

After lengthy settlement discussions, GHCH and the EEOC reached a tentative settlement agreement to resolve the matters at issue in this case. Declaration of M. Edward Taylor (Dkt. 15, Taylor Decl.) ¶ 2. However, the parties did not reach final agreement. *Id.* In short, GHCH demands a release of all claims, specifically to include state law claims that individual class members may have. The EEOC asserts that it cannot agree to such a demand because it (1) only represents the individuals on federal claims and (2) the tentative agreement did not release claims other than those brought in the Complaint. *Id.* ¶ 3.

GHCH contends that this matter cannot be resolved without establishing a channel "through which GHCH is able to communicate its proposed comprehensive release to" individuals in the class. *Id.* ¶ 5.

## III. DISCUSSION

GHCH moves the Court to intervene in order "to facilitate settlement efforts by appointing a magistrate judge through whom GHCH and the individuals may communicate regarding release of their potential state law claims as part of a comprehensive settlement agreement." *Id.* ¶ 6. GHCH's motion is predicated on two arguments. First, GHCH seeks such intervention under the Court's inherent power to control its docket and promote efficient use of judicial resources. Dkt. 14 (citing *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007); 28 U.S.C. § 636 (Federal Magistrate Act)). Second GHCH contends that EEOC's unwillingness to discuss the course and plan of settlement with the individuals it brought this action on behalf of violates the EEOC's counsels' obligations as set out under the Rules of Professional Conduct and the EEOC's own Regional Attorneys' Manual. *Id.*

(citing RPC1.4(a)(1)-(3), (b) (covering client communications); EEOC Regional

Attorneys' Manual, § IV.A.2)). Notably absent from GHCH's briefing on this matter is

case law regarding the EEOC's authority to enforce Title VII as it was empowered to do

so by Congress.

The EEOC, on the other hand, cites extensive authority for its position that the

Court should not intervene as moved for by GHCH and that it is acting in accord with the

authority for which Congress empowered it to sue private employers to enforce the

provisions of Title VII and obtain relief for aggrieved employees for violations thereof.

Dkt. 19 (citing 42 U.S.C. § 2000e-2; 29 C.F.R. § 1601.1).

In short, GHCH urges the Court to order individuals not currently participating in

settlement to participate in order for GHCH to agree to a comprehensive settlement,

which the EEOC asserts it cannot agree to on behalf of the individuals, as it relates to

state-law claims. *Compare* Dkt. 14 and 21 *with* 19. Review of the relevant case law

discussing the EEOC's authority in such instances is instructive to the Court's ruling

herein.

The United States Supreme Court has discussed the origin of the EEOC's authority

to file suits like the instant matter:

> This understanding of the statute is supported by the purpose of the 1972
> amendments of providing the EEOC with enforcement authority. The
> purpose of the amendments, plainly enough, was to secure more effective
> enforcement of Title VII. As Title VII was originally enacted as part of the
> Civil Rights Act of 1964, the EEOC's role in eliminating unlawful
> employment practices was limited to "informal methods of conference,
> conciliation, and persuasion." Civil actions for enforcement upon the
> EEOC's inability to secure voluntary compliance could be filed only by the
> aggrieved person. § 706(e), 78 Stat. 260. Congress became convinced,
> however, that the "failure to grant the EEOC meaningful enforcement
> powers has proven to be a major flaw in the operation of Title VII." S.Rep.
> No. 92-415, p. 4 (1971). The 1972 amendments to § 706 accordingly
> expanded the EEOC's enforcement powers by authorizing the EEOC to
> bring a civil action in federal district court against private employers
> reasonably suspected of violating Title VII. In so doing, Congress sought to
> implement the public interest as well as to bring about more effective
> enforcement of private rights. The amendments did not transfer all private

enforcement to the EEOC and assign to that agency exclusively the task of protecting private interests. *The EEOC's civil suit was intended to supplement, not replace, the private action. Cf. Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 45. The EEOC was to bear the primary burden of litigation, but the private action previously available under § 706 was not superseded. Under § 706(f)(1), the aggrieved person may bring his own action at the expiration of the 180-day period of exclusive EEOC administrative jurisdiction if the agency has failed to move the case along to the party's satisfaction, has reached a determination not to sue, or has reached a conciliation or settlement agreement with the respondent that the party finds unsatisfactory. The aggrieved person may also intervene in the EEOC's enforcement action. These private-action rights suggest that the EEOC is not merely a proxy for the victims of discrimination and that the EEOC's enforcement suits should not be considered representative actions subject to Rule 23. Although the EEOC can secure specific relief, such as hiring or reinstatement, constructive seniority, or damages for backpay or benefits denied, on behalf of discrimination victims, the agency is guided by "the overriding public interest in equal employment opportunity . . . asserted through direct Federal enforcement." 118 Cong. Rec. 4941 (1972). When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.

*** 

. . . the EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged. The individual victim is given his right to intervene for this very reason. The EEOC exists to advance the public interest in preventing and remedying employment discrimination, and it does so in part by making the hard choices where conflicts of interest exist. We are reluctant, absent clear congressional guidance, to subject § 706(f)(1) actions to requirements that might disable the enforcement agency from advancing the public interest in the manner and to the extent contemplated by the statute.

*Gen. Tel. Co. v. EEOC* (*General Telephone*), 446 U.S. 318, 326-332 (1980) (emphasis added).

The Ninth Circuit has also discussed the role and authority of the EEOC in actions such as this:

As the Supreme Court recognized, *the EEOC controls the charge regardless of what the charging party decides to do. See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002) ("[O]nce a charge is filed, . . . under the statute the EEOC is in command of the process."); *cf. id.* at 297 ("We have recognized several situations in which the EEOC does not stand in the employee's shoes.").

In *Waffle House*, the Court was faced with deciding "whether an agreement between an employer and an employee to arbitrate employment-related disputes bars the [EEOC] from pursuing

victim-specific judicial relief, such as backpay, reinstatement, and damages, in an enforcement action[.]" *Id.* at 282. The Supreme Court concluded that the employee's arbitration agreement did not hinder the EEOC's ability to prosecute the charge, reasoning that:

> [T]he EEOC takes the position that it may pursue a claim on the employee's behalf even after the employee has disavowed any desire to seek relief. *The statute clearly makes the EEOC the master of its own case* and confers on the agency the authority to evaluate the strength of the public interest at stake. Absent textual support for a contrary view, it is the public agency's province-not that of the court-to determine whether public resources should be committed to the recovery of victim-specific relief. And if the agency makes that determination, the statutory text unambiguously authorizes it to proceed in a judicial forum.

*Id.* at 291-92. We have echoed the view that the EEOC, and not the charging party, is the master of the case. See *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1542 (9th Cir.1987) ("The EEOC's right of action is independent of the employee's private action rights.").

The EEOC's investigatory authority serves a greater purpose than just investigating a charge on behalf of an individual. *See Waffle House*, 534 U.S. at 287. That is, "[t]he EEOC is not merely a proxy for victims of discrimination, but acts also to vindicate the public interest in preventing employment discrimination." *See EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1542 (9th Cir. 1987) (internal quotation marks omitted). The individual, of course, is guided by a desire to remedy his or her own discriminatory treatment, whereas the EEOC "is guided by the overriding public interest in equal employment opportunity asserted through direct Federal enforcement." *Gen. Tel. Co.,* 446 U.S. at 326 (internal quotation marks and ellipses omitted). By continuing to investigate a charge of systemic discrimination even after the charging party has filed suit, the EEOC is pursuing its obligation to serve the public interest. Indeed, . . . 29 C.F.R. § 1601.28(a)(3) . . . makes clear that the EEOC has concluded that a continuing investigation can further the public interest, even after the charging party has filed suit.

*EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 852 (9th Cir. 2009) (emphasis added).

In following *General Telephone*, the Seventh Circuit articulated the following points which are instructive to deciding the instant matter:

> The EEOC's primary role is that of a law enforcement agency and it is merely a detail that it pays over any monetary relief obtained to the victims of the defendant's violation rather than pocketing the money itself and putting them to the bother of suing separately. Having to persuade the district court that the class was numerous and homogeneous and that the EEOC's interest was aligned with that of the class members, the sort of things that compliance with Rule 23 would entail, would interfere with the Commission's exercise of its prosecutorial discretion. It would be like a court's undertaking to decide whether the Justice Department, in bringing a

suit attacking price fixing, was being adequately solicitous of the private interests of the victims of the defendant's conduct.

*In re Bemis Co, Inc.*, 279 F.3d 419, 421 (2002). In *Bemis*, the court went on to state that:

> Any doubt about the validity or scope of *General Telephone* has been laid to rest by the Supreme Court's decision, rendered just days after our order denying Bemis's petition, in *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002). In the course of holding, with many approving references to *General Telephone*, that even after the addition of compensatory and punitive damages to the EEOC's arsenal of remedies *the EEOC does not sue as the representative of the discriminated-against employees* who may benefit from the relief it obtains and hence is not barred from suing by the fact that the employees had agreed to submit their claims to binding arbitration, the Court stated that Title VII "*makes the EEOC the master of its own case* and confers on the agency the authority to evaluate the strength of the public interest at stake." *Id.* at 763. "The EEOC does not stand in the employee's shoes." *Id.* at 766.

*Id.* at 422 (emphasis added).

One of GHCH's stated reasons for supporting its motion for Court intervention is that it should not be exposed to separate actions and recovery by the individuals; however, this too has been addressed by the Supreme Court:

> The 1972 amendments retained the private right of action as "an essential means of obtaining judicial enforcement of Title VII, while also giving the EEOC broad enforcement powers. In light of the general intent to accord parallel or overlapping remedies against discrimination, we are unconvinced that it would be consistent with the remedial purpose of the statutes to bind all "class" members with discrimination grievances against an employer by the relief obtained under an EEOC judgment or settlement against the employer. This is especially true given the possible differences between the public and private interests involved.
>
> The courts, however, are not powerless to prevent undue hardship to the defendant and should perform accordingly. The employer may, by discovery and other pretrial proceedings, determine the nature and extent of the claims that the EEOC intends to pursue against it. Here, as we have noted, the EEOC moved to try initially the issue of liability, not to avoid proving individual claims, but merely to postpone such proof. It also goes without saying that the courts can and should preclude double recovery by an individual. Also, where the EEOC has prevailed in its action, the court may reasonably require any individual who claims under its judgment to relinquish his right to bring a separate private action. The Title VII remedy is an equitable one; a court of equity should adjust the relief accordingly.

*General Telephone*, 446 U.S. at 333. In other words, other means exist to protect GHCH from double recovery without resorting to Court intervention, which would

likely undermine the authority with which Congress empowered the EEOC to pursue actions such as this.

Based on the foregoing, the Court finds it well-established that the EEOC has been empowered by Congress with full authority to be the master of its case, which includes deciding which claims to bring and whether and on what basis to settle such claims. The foregoing case law also establishes that the EEOC's authority to enforce Title VII is intended to supplement and not to supplant the rights of individuals to bring their own action to seek relief for Title VII violations.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that GHCH's motion for Court intervention is **DENIED**.

DATED this 2nd day of June, 2011.


_____
BENJAMIN H. SETTLE
United States District Judge